8937

ELLER *ET AL.* v. MOTLEY *ET AL.*

(82 S. E. 992.)

LANDLORD AND TENANT. ESTOPPEL. VENDOR AND PURCHASER.

1. The relation of landlord and tenant is terminated between a life tenant as landlord and his lessee for a term of years by the death of the life tenant, and his lessee may then attorn to, and become the tenant of, the owner of the fee, who acquired the right to possession on the death of the life tenant.

2. LANDLORD AND TENANT — TITLE OF LANDLORD — TERMINATION — EFFECT.—Where a landlord, on renting the premises, informed his tenant that he owned a life estate only in the property, the term came to an end at the termination of the life estate, and the tenant was then discharged from such tenancy on payment to the life tenant's representative of all rent due or promised, after which the tenant was entitled to claim possession under a different title.

3. SPECIFIC PERFORMANCE — CONDITIONS TO RIGHT — PERFORMANCE. — Where a vendee entered under a contract to pay a specified sum, and placed valuable improvements on the land, he was entitled to enforce specific performance against the vendor or his heirs at law, in case of the vendor's death, as soon as his contract was fully performed, and it was not necessary that he should have paid the purchase price and retained possession for ten years.

Before MEMMINGER, J., Camden, November, 1913. Reversed.

Action by Mary Motley Eller, Dona Motley Laughlin, Ellen Motley Parish, John D. Motley, S. D. Motley, Barden Motley and Berry Motley, plaintiffs, against Wm. J. Motley and Earle Bowen, defendants, to recover possession of real property. From a judgment for plaintiffs, defendants appeal on exceptions to the charge of the Circuit Judge, which was as follows:

"Now, the claim is made, as you will see, on the part of the plaintiffs here as widow and children of Daniel Motley, that Daniel Motley owned this land, and it is undisputed from the evidence, whatever title Daniel Motley acquired

FOOTNOTE.—As to termination of tenancy at death of life tenant, see note in 11 L. R. A. (N. S.) 688.

to the land was acquired under the Hogan plat,—this old paper they claim he went in possession of the land under claim of right and color of title, color of title by the Hogan plat claiming as his own under this plat, and remaining there in possession of it, using it for the ordinary purposes for which such land is available, openly, notoriously and in hostility to the claim of others for the period of more than ten years, and that he so acquired title to it, to such land as designated in this plat. Now, if that be so, if he held it that way, then he would have acquired such title to the property, and they claim that he did.

The defendants come in on that point and they put in evidence a paper before you—the other paper you saw, torn up looking paper, claimed to be a deed, in which they seek to make it appear that Daniel Motley, got only a life estate in this property, and, of course, this paper upon its face shows, if he got the property under that paper, he would only have acquired a life estate, that when he died, of course that was an end of that estate, and his wife and children could not have acquired any title from him to something which expired when he died.

My idea of this case, which I charge you as law, that it can not come from the defendant in this case, Wm. J. Motley, to seek to defeat plaintiffs' title in that way, to avail himself of this as a defense, because from the undisputed evidence in the case, and from his own claim in the case, Wm. J. Motley went in possession of these premises either as a tenant of his brother, Daniel Motley, or as purchaser from Daniel.

The law is based upon the principle of public policy, that a tenant can not be heard to contest the title of his landlord, the person under whom he goes in possession. That you can readily see is a well founded principle. If you give work to a man on your premises, a tenant, and you bring suit against him, if he will not get off the land, will not surrender possession to you, it will not do for the man to come

in and say, "well, it is true I have no title to the property, still you have no title to the property,—therefore, I must have the property;" the law does not allow that, does not allow him to contest the landlord's title; and so, also, one who purchases land from another, he can not come in and claim the land he purchased from a man who didn't have title to convey to him. Founded also on the general principle of public policy. So I do not think, and so charge you that that paper there is available to this defendant, Wm. J. Motley, to defeat the plaintiffs of the right to recover possession of this property, and to recover this property, if otherwise they show their right under the law. So that matter will not be for consideration before you in that shape, form. The question before you primarily upon the plaintiffs' case, is whether the plaintiff, Mrs. Motley Eller, the widow of Daniel Motley, and her children have made out, by the greater weight of the evidence, that Daniel Motley got this paper, went in possession of it under this Hogan plat, claiming it under that plat, as a color of title reasonably in the premises, showing the general description of the premises, and held it by himself or by his tenant under him for a sufficient length of time, either ten years notoriously, adversely and hostile possession, title by adverse possession, or held it for the period of twenty years by hmself, or by his tenants from which the law would presume a grant. If he so held it for the period of ten years, complete title from which, if proved, possession would be presumed to follow, even although he had not been in actual possession of it. Now, if he has made that out by the greater weight of the evidence, you go to the question of the defense set out in the answer. As you heard from the evidence and argued before you, the plaintiffs here, the widow and children of Daniel Motley, they claim that Wm. J. Motley, the brother of Daniel, went in possession of this place as a tenant of Daniel, and that he paid rent and acknowledged Daniel Motley as his landlord of the premises, and not only did pay

that rent during the lifetime of Daniel Motley, but that he paid it after his death, to his widow, in the same way. If that be so, the law is this, that a man does not acquire any title as long as he remains a tenant, and he can not set up adverse holding as against his landlord until he makes actual disclaimer of the tenancy, and assert he is not holding as tenant, but assert he is holding it for himself and against the landlord of the premises under whom he went in possession, and that must be evidenced, under the statute, by a refusal to pay rent. The statute on that point is Code Civil Proc., section 131 (reads same).

Therefore, you will see upon the question of alleged tenancy, if the plaintiffs have proved that Wm. J. Motley went in as a tenant, then no title by adverse possession can commence to accrue for his benefit until he asserted he was not a tenant and refused to pay the rent. Now, if after refusal to pay rent, if he went in as tenant, and ten years passed in which he remained in continuous, adverse, open and notorious possession, in hostility to the claim of his landlord, then he would acquire title by reason of adverse possession. Now, you see under the facts of this case, that if he paid rent after the death of Daniel, his brother—and it is claimed here he did—that his title by adverse possession along that line could not prevail here because one of the children, the youngest one, was only about 22 years of age, and ten years have not elapsed since that child became twenty-one years of age at the comencement of this action, and the minority of one child on the question of adverse possession inures to the benefit of all, and, therefore, if he paid rent after the death of Daniel and during the minority of one of those children, and ten years not having passed since the child became twenty-one (21) before this action was commenced —you see it is impossible for ten years to have passed from the time of the refusal to pay rent was before the death of Daniel, why then up to the commencement of this action— therefore his claim of title by adverse possession on that

ground could not prevail here, after his refusal to pay rent —provided, of course, now that you decide he was a tenant and refused to pay rent before the death of Daniel, why then you see ten years would have started to run then at that time, when he refused to pay rent during the lifetime of Daniel, and if it started to run then during the lifetime of Daniel, but didn't run ten years before Daniel died, leaving minor children, why the fact that these children were minors would not suspend or stop the running of the ten years' time, so that ten years would continue to run, having started during the lifetime of Daniel, and if the evidence show he had held it ten years at the time of refusal to pay rent during the lifetime of Daniel prior to the commencement of this action, notwithstanding the fact there was a minor child whose minority had not ceased ten years prior to the commencement of the action, his title by adverse possession would be good under the law; because although he had ten years, the continuous running of time from the time he refused to pay rent commenced in the lifetime of Daniel and not stopped by reason of the death of Daniel, leaving minor children. That principle in reference to minority of one child inures for the benefit of all the others, applies, as I have said, to this matter of adverse possession; it does not apply in the case where possession has been held for twenty years, from which the law presumes a grant, but that question can not possibly obtain in this case; and you could find, as plaintiffs have asked me in one of their requests to charge, you could find that it ran against some of the children and not as against some of the children and not as against the others, for the simple reason that the undisputed facts appear that Daniel Motley has only been dead fifteen years, consequently, if the possession of William started twenty years prior to the commencement of this action, why, necessarily, it started during the lifetime of Daniel, and if it ran for ten years from that time on he would get good title by adverse possession, and in fact these

minors coming in could not affect the case in one way, shape or form, because necessarily as a matter of inevitable conclusion, from the facts, go back, twenty years back Daniel was alive, and his possession would have commenced during the lifetime of Daniel Motley taking it along the line, claimed in the defense of Wm. Motley, that he didn't come in possession of that place as tenant at all, but claims he went in there as purchaser from Daniel, his brother, that he went in there as a purchaser by what is known as parol or verbal contract, bought the property and paid for it. The law on that question is a man does not necessarily have to have a deed, written evidence of title, he may show complete title by parol or verbal agreement where he has taken possession of the property, and used it ordinarily, and has paid the purchase price, and has held it for the period of ten years after he has paid the money.

Now, if he went in possession of the property as purchaser from Daniel and paid part of the purchase money, now that ten years would not commence to run until he paid all the purchase money; it would not commence to run from the time he made the contract to purchase, but if after he had paid the last installment of the purchase money, the ten years ran from then on prior to the commencement of this action in which he remained in open, notorious, continuous, adverse possession of the property, claiming it as his own, why, then, his title would become a title as well as if he had gotten a written deed for the property, but such would not commence to run against him, run for his benefit until he had paid the last installment of the purchase money. You see the idea there. He claimed he went in as purchaser, and paid the last installment of the purchase money during the lifetime of Daniel Motley. If that be so, gentlemen, and from that time he held it for a period of ten years, holding it openly, notoriously, adversely, in hostility to Daniel Motley, who claimed to be the true owner, then he would have acquired absolute title by

adverse possession under that claim. By adverse posses-
sion the law means the man uses the property for ordinary
purposes for which such property is adapted, and that he
uses it in a way that shows to those who would have a
claim against it, or to people generally that he is asserting
ownership, that he is openly and notoriously holding it,
that he is holding it in hostility to any claim of the true
owner, and that he holds it continuously as such; that is
what is meant by adverse possession in law. So these are
questions you have to decide in this case. This matter of
his claim of adverse possession is a matter of affirmative
defense, the burden of proving which is upon him to show
the material elements going to make up that claim by the
greater weight or preponderance of the evidence.

Now, then, gentlemen, if you decide that William Mot-
ley paid the rent for this property after the death of Daniel
Motley, why, then, he can not prevail in this case, and
you can not find a verdict in his favor, because one of the
children became twenty-one, and his title would not be com-
plete on that line; if you decide he went in as purchaser, but
didn't pay the purchase money, last part of it during the
lifetime of Daniel Motley, and that he paid it since the
death of Daniel Motley, he can not prevail, the same minor-
ity children would come in against his title, holding by
adverse possesion under his claim. If you decide he paid
the last installment during the lifetime of Daniel Motley
and held it continuously, adversely for ten years since that
time, on that ground his title would be a good and complete
one and would be if you decide,—if he refused to pay rent
during the lifetime of Daniel Motley and held it adversely
for ten years from that time.

If you decide in favor of the plaintiff in this case your
verdict will be, we find for the plaintiff,—on the question
of damages you heard the evidence on that line as to cut-
ting trees, etc.; and if you decide in favor of the plaintiff
that he is entitled to recover this land, then the verdict

would be, we find for the plaintiff the property described as follows—I take it it would be the property described in the answer of Wm. J. Motley, and would be a sufficient description.

*Messrs. B. B. Clarke* and *Thos. J. Kirkland,* for appellant, cite under 4th exception: 18 A. & E. Enc. of L. 422; 4 Strob. 196; 22 S. C. 451; 26 S. C. 609; under 5th exception: 26 S. C. 608; 11 A. & E. Enc. of L. 440, 441; under 7th exception: 10 A. & E. Enc. of L. 494, 497; 15 S. C. 262; 24 Okla. 472, and note in 20 Am. & Eng. Ann. Cas. 353 and 354.

*Messrs. A. M. Deal* and *James S. Verner,* for respondent, cite as to 7th exception: 21 S. C. 112; 39 S. C. 356, 368; as to 4th and 5th exceptions: 29 S. C. 377; 1 Strob. 1; 69 S. C. 84; 22 S. C. 133; 5 Rich. 541; 54 S. C. 394; 53 S. C. 216; 48 S. C. 234; 50 S. C. 293; 23 S. C. 100; 95 S. C. 100. *Appellants should have presented proposition desired in request to charge:* 56 S. C. 126-136; 43 S. C. 206; 51 S. C. 103; 52 S. C. 438; 54 S. C. 192; 58 S. C. 47; 59 S. C. 162; 60 S. C. 153; 58 S. C. 94-97.

September 24, 1914.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action for recovery of real property and damages for the detension thereof, and was tried before his Honor, Judge Memminger, and a jury, at the Fall term of the Court, 1913, for Kershaw county, and resulted in a verdict for the plaintiffs. After entry of judgment, defendants appeal and, by seven exceptions, impute error to his Honor in his charge to the jury. The 4th, 5th, and 7th exceptions are as follows:

"Fourth. In precluding the jury from considering a part of the evidence, to wit: A conveyance from Peter Bluford,

which carried, as held by his Honor, only a life estate to Daniel Motley, thereby committing error of law, in holding and charging the jury that the tenant could not show that the title of his landlord had expired or been extinguished since the period of the tenancy commenced, and that to rent from one who holds a life estate is to acknowledge fee simple in landlord.

Fifth. In precluding the jury from considering a part of the evidence, to wit: A conveyance from Peter Bluford, which carried, as held by his Honor, only a life estate to Daniel Motley, thereby committing error of law, in holding and charging that a purchaser may not show that a title of him who sold the land has expired or been extinguished since the purchase, and that to purchase from one who holds a life estate is to acknowledge fee simple in the grantor.

Seventh. In charging, 'If you decide he went in as purchaser (speaking of William Motley), but did not pay the purchase money, last part of it, during the lifetime of Daniel Motley, and that he paid it since the death of Daniel Motley, he can not prevail;' the error of law being found in instructing the jury that he who is in possession of land and has paid the purchase money for land could not retain the same unless his possession lasted for ten years thereafter."

These exceptions must be sustained. One who rents an estate from a life tenant is only the tenant of the life tenant as long as the life tenant is alive and entitled to enjoy the rents and profits from the land; as soon as the life tenant dies and his estate terminates and the fee goes to another, and the tenant of the life tenant pays all rent due for the estate leased from the life tenant to the proper representatives of the life tenant, the relationship of landlord and tenant between the owner of the life estate and the tenant ceases. Of course, the tenant will not be heard to question the title of his landlord, or to dispute the same; but where it is unquestioned that the estate rented or leased was only a life estate and the landlord was only a life tenant, the

tenant is discharged from such tenancy upon the falling in of the life estate and a payment to the proper representative of the life tenant of all rent due or promised. While it is a general rule that one who enters under the title of another is estopped from denying it, there are some exceptions; as where one leases or rents from a life tenant or any one holding an estate less than a fee for a term of years. There was some evidence in this case that the landlord from whom the tenant rented notified him at the time he rented that he only had a life estate in the land, and that he, the landlord, held under a conveyance which only gave him a life estate in the land. The tenant certainly could not question the title of the landlord; but if he was informed that the landlord only held a life estate in the land leased, then he could only be the tenant of the landlord while landlord held that estate, and upon the termination of the life estate by death of life tenant he could not occupy the land as against the owners in fee who acquired title by the death of life tenant, but could then become the tenant of the real owners. But, of course, if there was a contention between *bona fide* claimants to the land and there was any doubt as to whether the life estate of the landlord was terminated, or a claim made that the landlord was a fee simple owner, the tenant would not be allowed to question the title of his landlord; but it was competent in this case for it to be shown that the landlord only claimed a life estate, and so informed his tenant when he rented, and never claimed fee simple title; and then tenant could show that he was the tenant of one who only held a life estate, and if it could be shown that the landlord was only a life tenant in the lands leased, then upon his death and upon payment of the full amount of rent contracted for by the tenant to the landlord's proper representative, the relationship of landlord and tenant ceased, and the tenant could attorn to the real owner; otherwise the tenant would hold as a tenant under parties who had no right or title and becomes a trespasser, or be deprived of a home. These questions should

have been submitted to the jury, and the exceptions to his Honor's charge raising the questions are well taken. His charge was prejudicial to the defendant. The seventh exception should be sustained. If William Motley went into possession of the land as purchaser with a contract to pay a specified sum for a specified amount he would be entitled to a decree for specific performance upon his fully carrying out the terms and conditions of the contract entered into, and would not have been required to have paid the price agreed upon in the lifetime of Daniel Motley. He did not have to pay the purchase price and retain possession ten years after such payment to acquire title. If he purchased the land, went into possession of the same, put valuable improvements thereon, and carried out his contract as to payments, as soon as he fully performed all of his promises and agreements as contracted for between the parties as to the purchase, he would be entitled to a deed. And upon full performance on his part of the terms and conditions of the contract, whether the vendor was alive or dead, he would be entitled to a deed from the heirs at law of the vendor, or the Courts, upon proper showing, would declare him the owner of the land and require a deed to be made. There can be no question that the purchaser of the land upon the payment to the vendor, or his heirs, of the purchase price agreed upon between the parties at the time of contract of sale or any balance due of the purchase price would be entitled to receive a deed; and it can not be maintained that a failure to pay the whole to vendor in his lifetime will defeat the right of purchaser to retain possession. The payment of balance to vendor's heirs will be sufficient, even though they be minors. His Honor was in error in the particulars complained of in exception seven, and this exception is sustained.

It is unnecessary to consider the other exceptions.

Judgment reversed and new trial granted.